IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSHUA HAMILTON AND SYDNEY HAMILTON**, Plaintiffs, v. **GRAPEVINE-COLLEYVILLE INDEPENDENT SCHOOL DISTRICT**, Defendant. | § § § § § § § § § § § § § | Civil Action No. _____ |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Plaintiffs Joshua Hamilton, PhD ("Dr. Hamilton") and Sydney Hamilton ("Mrs. Hamilton," and together with Dr. Hamilton, "Plaintiffs"), and files this suit based on violations by employees and agents of Defendant Grapevine-Colleyville Independent School District ("Defendant" or "GCISD") of the Americans with Disabilities Act of 1990 (the "ADA"), as amended, 42 U.S.C. §§ 12101, et seq., the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, et. seq., Title IX of the Education Amendments Act of 1972, as amended, 20 U.S.C. §§ 1681, et. seq., Free Speech Retaliation under the First Amendment of the U.S. Constitution as actionable under 42 U.S.C. § 1983, and the Texas Open Meetings Act, Tex. Gov't Code §§ 551, et. seq. In support thereof, Plaintiffs would respectfully show the Court as follows:

# I.
# PARTIES

1. Plaintiff Joshua Hamilton, PhD is an adult citizen who resides in Tarrant County, Texas. Dr. Hamilton is married to Plaintiff Sydney Hamilton.

2. Plaintiff Sydney Hamilton is an adult citizen who resides in Tarrant County, Texas. Mrs. Hamilton is married to Plaintiff Joshua Hamilton, PhD.

3. Defendant Grapevine-Colleyville Independent School District is a Texas public school district under the authority of the Texas Education Agency. GCISD's administrative offices are located in Tarrant County, Texas at 3051 Ira E. Woods Avenue, Grapevine, Texas 76051.

# II.
# JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as it poses a federal question.

5. This Court has supplemental jurisdiction over Plaintiffs' state-law claims brought in this matter pursuant to 28 U.S.C. § 1367, as the state-law claims are so related to the claims over which this Court has federal question jurisdiction that they form part of the same case or controversy.

6. Venue is proper in the United States District Court for the Northern District of Texas, Fort Worth Division pursuant to 28 U.S.C. § 1391, because it is the district in which a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.

## III.
## FACTS

7. Dr. Hamilton holds a Texas Educator Certificate through the State Board for Educator Certification, the licensing division of the Texas Education Agency ("TEA").

8. Dr. Hamilton was employed by GCISD as a teacher and oral interpretation coach at Grapevine High School ("GHS") from in or about August 2017 to in or about December 2019. Dr. Hamilton's primary job duty was to teach communication studies, leadership, college readiness, and oral interpretation courses at GHS. He was assigned the additional duty assignments of University Interscholastic League ("UIL") Academic Coordinator for GHS and as the coach of GHS's UIL Oral Interpretation Team. Dr. Hamilton's contract with GCISD did not require that he serve as the UIL Academic Coordinator or the coach of GHS's UIL Oral Interpretation Team.

9. In or around January 2019, Dr. Hamilton notified Dave Denning, his supervisor and the principal for GHS, via electronic and in-person communication that he was under the care of mental health professionals.

10. In or around March 2019, Dr. Hamilton further notified Mr. Denning that Dr. Hamilton was diagnosed by these mental health professionals with Bi-Polar Post Traumatic Stress Disorder ("PTSD"). Dr. Hamilton specifically informed Mr. Denning that the source of Dr. Hamilton's mania was related to a student's, MG, threats of suicide. When Dr. Hamilton initially learned of MG's threat to commit suicide, Dr. Hamilton properly intervened and, among other things, notified Mr. Denning and MG's parents.

11. In or around March 2019, as part of his added duty assignment as the coach for GHS's Oral Interpretation Team, Dr. Hamilton traveled with the team to the Texas Forensics Association ("TFA") State Tournament in Houston, Texas. Two of Dr. Hamilton's students, MG

(the same MG who had previously threatened to commit suicide) and KM got involved in argument. Following the argument, MG again exhibited suicidal tendencies after the event. This incident was very psychologically taxing on Dr. Hamilton, and it triggered his PTSD. Dr. Hamilton was rendered temporarily incapable of operating a vehicle and had to rely on a fellow employee of GCISD from another high school campus to transport Dr. Hamilton and his team members home from TFA State. Dr. Hamilton promptly notified Mr. Denning of the incident as well as the incident's effect upon Dr. Hamilton by phone.

12. Upon returning from TFA State, Dr. Hamilton took the following Monday off from work to process this triggering event. Dr. Hamilton then attempted suicide on or about March 16, 2019.

13. On or around March 18, 2019, Dr. Hamilton notified Mr. Denning of Dr. Hamilton's suicide attempt via text message and later in person. Dr. Hamilton further notified Mr. Denning that Dr. Hamilton was obtaining treatment through an outpatient care facility. Dr. Hamilton reported additional events he believed triggered his PTSD to Mr. Denning via text message, email, phone, and in-person conversations at various times during the Spring 2019 semester through September 2019. Many of these triggering events that Dr. Hamilton reported to Mr. Denning involved Dr. Hamilton dealing with the depression and suicidal ideation by MG, Dr. Hamilton being told by a parent of MG that Dr. Hamilton would be the reason that MG committed suicide, or otherwise arose out of Dr. Hamilton's additional duty assignment as the coach of the Oral Interpretation Team.

14. In or around April or May 2019, Dr. Hamilton requested, as a reasonable accommodation for his disability, reassignment from his additional duty assignment as the coach

of the Oral Interpretation Team. Mr. Denning failed to report the request to his superiors or to engage in the interactive process with Dr. Hamilton regarding his request.

15. Dr. Hamilton submitted his resignation to Mr. Denning in May 2019. Mr. Denning rejected Dr. Hamilton's resignation, and instead talked Dr. Hamilton out of resigning by encouraging Dr. Hamilton "just see how it is in the fall."

16. On or around the first day of the 2019-2020 school year in an August 2019 meeting with Mr. Denning, Dr. Hamilton again notified Mr. Denning of his request to be reassigned from his additional duty assignment as UIL Oral Interpretation Coach due to Dr. Hamilton's ongoing anxiety. Mr. Denning never responded to this request for a reasonable accommodation, ignoring Dr. Hamilton's request for a reasonable accommodation and failing to initiate or participate in the interactive process with respect to Dr. Hamilton's request.

17. In the same August 2019 meeting with Mr. Denning, Dr. Hamilton discussed with Mr. Denning his diagnosis as a person with PTSD due to repressed same-sex attraction following sexual abuse he suffered during childhood and adolescence.

18. In response, Mr. Denning informed Dr. Hamilton that he would be supported in sharing this information with students and team members as "no one will care." Acting on this direction from Mr. Denning, Dr. Hamilton eventually shared with key individuals his diagnosis stemming from his treatment for PTSD as a means of healing from his prior psychological trauma.

19. Oral Interpretation is a competitive acting activity, which requires students to get in touch with their emotions to be effective. As part of instructing students how to get in touch with their emotions, at various times, Dr. Hamilton disclosed his psychological ailments to a select few oral interpretation team members that he was coaching, in one or more instances stating that he had come out of these struggles and identified as a gay or bisexual man.

20. Upon information or belief, during September of October of 2019, a parent or parents of one or more of Dr. Hamilton's students complained to Defendant about Dr. Hamilton's disclosure that he identified as a gay or bisexual man.

21. On or about September 6, 2019, within two weeks of Dr. Hamilton's last request for reasonable accommodation and within days of Dr. Hamilton's disclosure that he identified as gay or bisexual, Dr. Hamilton was placed on administrative leave. Defendant never addressed or acted upon Dr. Hamilton's request for reasonable accommodation.

22. At the meeting in which Dr. Hamilton was informed he was being placed on administrative leave, on or around Tuesday, September 6, 2019, Mr. Denning and GCISD Director of Human Resources, Gemma Padgett, raised the issue of Dr. Hamilton sharing his "lifestyle change" of coming out as a gay/bi man and separating from his wife, Mrs. Hamilton, and his discussion of such "lifestyle" changes as a reason for placing Dr. Hamilton on Administrative Leave.

23. On or around Friday, September 9, 2019, the Ms. Padgett informed Dr. Hamilton that he would be terminated from employment with GCISD.

24. On or around September 19, 2019, Defendant, through counsel, informed Dr. Hamilton's then-attorney of a "new issue related to Josh Hamilton," specifically that "[Sydney Hamilton] has now sent a text to at least one staff member about [Dr. Hamilton]'s situation" and directed Mrs. Hamilton to "to cease contacting staff members about [Dr. Hamilton]'s suspension and possible termination."

25. On or around October 16, 2019, Dr. Hamilton filed a Texas Public Information Act request, requesting documents and records in the possession of the Defendant regarding the investigation of any and all complaints against Dr. Hamilton. The Defendant failed to fully respond

or file an exemption from disclosure with the Texas Attorney General within a reasonable time as required by state law.

26. On or about October 3, 2019, Dr. Hamilton filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"), alleging disability discrimination, sex discrimination, and retaliation related to all of the foregoing events.

27. On or about October 16, 2019, Dr. Hamilton filed a charge of discrimination with the Texas Workforce Commission ("TWC"), alleging disability discrimination, sex discrimination, and retaliation related to all of the foregoing events.

28. On or about October 16, 2019, Dr. Hamilton filed a charge of discrimination with the U.S. Department of Education's Office for Civil Rights ("OCR"), alleging disability discrimination, sex discrimination, and retaliation related to all of the foregoing events.

29. On or about October 18, 2019, the undersigned counsel sent a letter (hereinafter "Notification Letter") to Defendant's Superintendent via counsel for Defendant and put Defendant on notice of the complaints filed with the OCR, the EEOC, and the TWC alleging disability and sex-based discrimination. In the Notification letter, Dr. Hamilton requested that Defendant "promptly investigate these allegations and cease all threats and actions related to the termination of Dr. Hamilton until such time as these allegations are fully investigated."

30. Despite being notified on or around October 18, 2019, of Dr. Hamilton's disability and sex discrimination complaints filed against the Defendant with the OCR, the TWC, and the EEOC, the Defendant failed follow its own policies requiring Defendant to and/or open an internal investigation into Dr. Hamilton's sex and disability discrimination complaints raised during the course of Dr. Hamilton's administrative leave.

31.     Upon request of counsel for Defendant, where possible, the undersigned counsel provided full copies of the complaint filed with each entity.

32.     At the time of the Notification Letter in October 2019, Defendant had not posted its Employee Handbook to the Defendant's website for the 2019-2020 school year. Further, the 2018-2019 handbook, which was posted during all relevant times in Fall 2019, did not list the contact information for the Defendant's Title IX, Section 504, or ADA coordinator for employees. Only officials for student complaints were listed. A diligent search of Defendant's publicly available website indicated that no "ADA coordinator" is posted to the website in any publicly available area. Dr. Hamilton did not have access to employee-only areas of Defendant's website since Dr. Hamilton was placed on administrative leave, and his access to employee resources was suspended. Failure to post such notice is a direct violation of Defendant's Policy DAA (Legal), 34 C.F.R. § 104.8, 28 C.F.R. § 35.107(b), and 34 C.F.R. § 106.8(b).

33.     On or around October 18, 2019, Defendant posted the agenda for a meeting of the Defendant's Board of Trustees (the "Board") to occur on Monday, October 21, 2019 (hereinafter "the Agenda"). The posting listed as item XII. REPORTS OF THE SUPERINTENDENT (B) "Consider authorizing the Superintendent to give notice of proposed contract termination during the contract year of a term contract employee -Action." Upon information and belief, the agenda item was in reference to Dr. Hamilton.

34.     In an email from counsel for Defendant on or about October 18, 2019, counsel for Defendant confirmed that, contrary to the Defendant's custom and practice, the Agenda and corresponding "District Information Item" did not bear Dr. Hamilton's name but, on information and belief was intended to discuss a complaint against Dr. Hamilton in Executive Session at the Board meeting on Monday, October 21 at 5:00 p.m.

35. On or around October 21, 2019, the Defendant's Board voted to empower the Defendant's Superintendent to send a termination notice to Dr. Hamilton.

36. Only after the Defendant's Board took action on October 18, 2019, to vote to terminate Dr. Hamilton, did counsel for Defendant on October 21, 2019, request information from Dr. Hamilton concerning his sex and disability complaints, which was outside the procedural steps outlined in the District's written policy concerning the investigation of such complaints.

37. In or around October 2019, Defendant filed a complaint against Dr. Hamilton with the Texas Education Agency ("TEA") and/or the Texas State Board of Educator Certification ("SBEC") alleging, in part, that Dr. Hamilton violated the Texas Educator's Code of Ethics, Tex. Admin. Code § 247.2, by informing a small group of his upperclassmen team members of his sexual orientation and disability.

38. In or around November 2019, the Defendant's Superintendent amended the notice of termination issued to Dr. Hamilton to add additional allegations, despite not previously receiving official permission from the Board for the amendment, the Board not voting on the amendment in Open Session, and the amendment not being provided to Dr. Hamilton first, but rather being filed directly by the Defendant with the Texas Commissioner of Education and appointed Hearing Officer, in violation of state procedures for notice of termination.

39. On November 20, 2019, Dr. Hamilton submitted his resignation. Dr. Hamilton resigned in lieu of termination and only did so involuntarily. It is undisputed that GCISD would have terminated Dr. Hamilton had he not tendered his resignation.

40. Despite repeated requests in October and November 2019, Defendant denied Plaintiffs' timely access to the personal property of Dr. Hamilton held at GHS. Some of Dr. Hamilton's property was missing and or damaged, including, but not limited to numerous books,

artwork from prior students, a backpack of personal items, purchased GHS-related items including yearbooks and spirit wear, and coaching trophies. Damaged items included books, picture frames, and photos. To date, Defendant has not been reimbursed or otherwise compensated by Plaintiffs for Dr. Hamilton's lost or damaged property for which Plaintiff was able to document ownership through receipts and other records.

41. In or around April 2014, Dr. Hamilton was hired by the University of Texas at Arlington High School ("UTAHS") as an Online Instructor. Upon information of belief, in or around November 2019, Defendant's Superintendent shared non-public information by phone with the principal of UTAHS. Dr. Hamilton was then summarily terminated by UTAHS based solely upon the information conveyed by Defendant's Superintendent.

## IV.
## CAUSES OF ACTION

**COUNT 1: Disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended, 29 U.S.C. §§ 12101, et seq., and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq.:**

42. Plaintiffs incorporate the preceding paragraphs as if fully restated herein.

43. Defendant is an employer as defined by the ADA.

44. Dr. Hamilton is a qualified individual with a disability as defined by the ADA.

45. Dr. Hamilton's Bi-Polar PTSD is a mental impairment that interfered with Dr. Hamilton's major life activities of caring for oneself, sleeping, breathing, concentrating, thinking, communicating, and/or working.

46. At all times, Dr. Hamilton remained capable of performing the essential functions of his job with reasonable accommodations.

47. Defendant and its agents and employees regarded Dr. Hamilton as a qualified individual with a disability as defined by the ADA.

48. Based upon Dr. Hamilton's disclosures to Mr. Denning, Defendant was aware that Dr. Hamilton had a record of having an impairment that interfered with his major life activities.

49. Dr. Hamilton timely filed a Charge of Discrimination with the EEOC regarding Defendant's violation of his rights under the ADA, received a right-to-sue letter from the EEOC, and timely filed this litigation within 90 days of his receipt of the EEOC's right-to-sue letter. Dr. Hamilton has thus satisfied the preconditions to bringing suit under the ADA.

50. Defendant discriminated against Dr. Hamilton on the basis of disability when Defendant failed to engage in an interactive process and refused to grant Dr. Hamilton's reasonable accommodation request, made to Mr. Denning, for reassignment or time away from his extra duty assignment as the Oral Interpretation Coach at Grapevine High School.

51. Defendant also discriminated against Dr. Hamilton on the basis of disability or perceived disability by treating Dr. Hamilton in a discriminatory manner as compared to non-disabled employees when taking each of the following actions:

    a. Placing Dr. Hamilton on administrative leave;

    b. Notifying Dr. Hamilton he would be terminated;

    c. Failing to respond to or open an investigation into Dr. Hamilton's complaints of disability discrimination;

    d. Voting to empower the superintendent to terminate Dr. Hamilton;

    e. Terminating Dr. Hamilton; and

    f. By filing a complaint against Dr. Hamilton with the TEA and/or SBEC.

52. During the 2019–2020 school year, Defendant discriminated against Dr. Hamilton and similarly situated employees with disabilities when it failed to publish notice of Defendant's ADA coordinator, established pursuant to the ADA and Section 504 of the Rehabilitation Act to employees directly on the school-owned website or in the Defendant's Employee Handbook.

53. As a result of Defendant's discrimination in violation of the ADA, Dr. Hamilton suffered damages, including the loss of his job, wages, fringe benefits, and the opportunity to continue working for Defendant in a position better-suited to accommodating his disability.

**COUNT 2: Sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et. seq.:**

54. Plaintiffs incorporate the preceding paragraphs as if fully restated herein.

55. Defendant is an employer as defined by Title VII.

56. Discrimination on the basis of sexual orientation is a form of sex discrimination prohibited by Title VII.

57. Dr. Hamilton timely filed a charge of discrimination with the EEOC regarding Defendant's violation of his rights under Title VII, received a right-to-sue letter from the EEOC, and timely filed this litigation within 90 days of his receipt of the EEOC's right-to-sue letter. Dr. Hamilton has thus satisfied the preconditions to bringing suit under Title VII.

58. Defendant discriminated against Dr. Hamilton on the basis of sex when taking each of the following actions:

   a. Placing Dr. Hamilton on administrative leave;

   b. Notifying Dr. Hamilton he would be terminated;

   c. Failing to respond to or open an investigation into Dr. Hamilton's complaints of sex discrimination;

    d.   Voting to empower the superintendent to terminate Dr. Hamilton;

    e.   Terminating Dr. Hamilton; and

    f.   By filing a complaint against Dr. Hamilton with the TEA and/or the SBEC.

59. During the fall 2019 semester, Defendant discriminated against Dr. Hamilton on the basis of sex when, through legal counsel, it conveyed to Dr. Hamilton restrictions the Defendant had imposed on Mrs. Hamilton's ability to speak with Defendant employees, despite Mrs. Hamilton not being an employee of Defendant and the fact that Mrs. Hamilton had a pre-existing relationship with the employee of Defendant in question.

60. As a result of Defendant's discrimination in violation of Title VII, Dr. Hamilton suffered damages, including, but not limited to the loss of his job, wages, and fringe benefits.

**COUNT 3: Retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 29 U.S.C. §§ 12101, et seq.:**

61. Plaintiffs incorporate the preceding paragraphs as if fully restated herein.

62. Defendant is an employer as defined by the ADA.

63. Dr. Hamilton engaged in protected activity under the ADA when he requested a reasonable workplace accommodation for reassignment or time away from his extra duty assignment as the Oral Interpretation Team coach at GHS.

64. Dr. Hamilton engaged in protected activity under the ADA when he filed a charge of discrimination complaining of disability discrimination with the EEOC on or about October 3, 2019 and TWC on or about October 16, 2019.

65. Dr. Hamilton engaged in protected activity under the ADA when he notified GCISD that he had filed a charge of discrimination complaining of disability discrimination with the EEOC and TWC.

66. Defendant retaliated against Dr. Hamilton when because of his protected activity and/or in lieu of accommodating Dr. Hamilton's request for reasonable accommodation or initiating the interactive process, Defendant took the following actions:

   a. Placing Dr. Hamilton on administrative leave;

   b. Notifying Dr. Hamilton he would be terminated;

   c. Failing to respond to or open an investigation into Dr. Hamilton's complaints of disability discrimination;

   d. Voting to empower the superintendent to terminate Dr. Hamilton;

   e. Terminating Dr. Hamilton;

   f. By amending the notice of termination issued to Dr. Hamilton to add additional allegations, despite not receiving official permission from the Board from the amendment, the Board not voting on the amendment in an open meeting, and the amendment not being provided to Dr. Hamilton first;

   g. By filing a complaint against Dr. Hamilton with the TEA and/or SBEC; and

   h. By conveying non-public information to UTAHS, resulting in Dr. Hamilton's termination.

67. As a result of Defendant's retaliation in violation of the ADA, Dr. Hamilton suffered damages, including, but not limited to, the loss of his job, wages, fringe benefits, and the opportunity to continue working for Defendant in a position better-suited to accommodating his disability.

**COUNT 4: Retaliation in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e, et seq.:**

68. Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

69. Defendant is an employer as defined by Title VII.

70. Dr. Hamilton engaged in protected activity under Title VII when he filed a charge of discrimination complaining of sex discrimination with the EEOC on or about October 3, 2019, and TWC on or about October 16, 2019.

71. Dr. Hamilton engaged in protected activity under Title VII when he notified GCISD that he had filed a charge of discrimination complaining of sex discrimination with the EEOC and TWC.

72. Defendant retaliated against Dr. Hamilton when because of his protected activity, Defendant took the following actions:

   a. Failing to respond to or open an investigation into Dr. Hamilton's complaints of sex discrimination;

   b. Voting to empower the superintendent to terminate Dr. Hamilton;

   c. Terminating Dr. Hamilton;

   d. By amending the notice of termination issued to Dr. Hamilton to add additional allegations, despite not receiving official permission from the Board from the amendment, the Board not voting on the amendment in an open meeting, and the amendment not being provided to Dr. Hamilton first;

   e. By filing a complaint against Dr. Hamilton with the TEA and/or the SBEC; and

   f. By conveying non-public information to UTAHS, resulting in Dr. Hamilton's termination.

73. As a result of Defendant's retaliation in violation of Title VII, Dr. Hamilton suffered damages, including, but not limited to the loss of his job, wages, and fringe benefits.

**COUNT 5: Sex discrimination in violation of Title IX of the Education Amendments Act of 1972, as amended, 20 U.S.C. §§ 1681, et. seq.:**

74. Plaintiffs incorporate the preceding paragraphs as if fully restated herein.

75. Defendant is a recipient of federal funds from the U.S. Department of Education and is a covered employer as defined by Title IX.

76. Discrimination on the basis of sexual orientation is a form of sex discrimination prohibited by Title IX.

77. Defendant discriminated against Dr. Hamilton on the basis of sex and disability when taking each of the following actions:

   a. Placing Dr. Hamilton on administrative leave;

   b. Notifying Dr. Hamilton that he would be terminated;

   c. Failing to respond to or open an internal investigation into Dr. Hamilton's sex and disability discrimination complaints;

   d. Voting to empower the superintendent to terminate Dr. Hamilton;

   e. Terminating Dr. Hamilton; and

   f. By filing a complaint against Dr. Hamilton with the TEA and SBEC.

78. During the fall 2019 semester, Defendant discriminated against Dr. Hamilton on the basis of sex and disability when, through legal counsel, it conveyed to Dr. Hamilton restrictions the Defendant had imposed on Mrs. Hamilton's ability to speak with Defendant employees, despite Mrs. Hamilton not being an employee of Defendant and the fact that Mrs. Hamilton had a pre-existing relationship with the employee of Defendant in question

79. As a result of Defendant's discrimination in violation of Title IX, Dr. Hamilton suffered damages, including the loss of his job, wages, and fringe benefits.

**COUNT 6: Retaliation in violation of Title IX of the Education Amendments Act of 1972, as amended, 20 U.S.C. §§ 1681, et. seq.:**

80. Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

81. Defendant is a recipient of federal funds from the U.S. Department of Education and is a covered employer as defined by Title IX.

82. Dr. Hamilton engaged in protected activity under Title VII when he filed a charge of discrimination complaining of sex discrimination with the EEOC on or about October 3, 2019 and TWC on or about October 16, 2019.

83. Dr. Hamilton engaged in protected activity under the ADA when he notified GCISD that he had filed a charge of discrimination complaining of sex discrimination with the EEOC and TWC.

84. Defendant retaliated against Dr. Hamilton when because of his protected activity, Defendant took the following actions:

   a. Failed to respond to or open an investigation into Dr. Hamilton's complaints of sex discrimination;

   b. Voted to empower the superintendent to terminate Dr. Hamilton;

   c. Termined Dr. Hamilton;

   d. By amending the notice of termination issued to Dr. Hamilton to add additional allegations, despite not receiving official permission from the Board from the amendment, the Board not voting on the amendment in an open meeting, and the amendment not being provided to Dr. Hamilton first;

   e. By filing a complaint against Dr. Hamilton with the TEA and/or the SBEC; and

      f.    By conveying non-public information to UTAHS, resulting in Dr. Hamilton's termination.

85.    As a result of Defendant's retaliation in violation of Title VII, Dr. Hamilton suffered damages, including, but not limited to the loss of his job, wages, and fringe benefits.

**COUNT 7: Free Speech Retaliation under the First Amendment of the U.S. Constitution as actionable under 42 U.S.C. §1983:**

86.    Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

87.    GCISD is a person as that term is used in 42 U.S.C. § 1983.

88.    At all times relevant, GCISD was operating under the color of law.

89.    Mrs. Hamilton engaged in speech under the First Amendment by speaking as a citizen on a matter of public concern with an employee of Defendant with whom Mrs. Hamilton had a preexisting relationship.

90.    Defendant retaliated against Mrs. Hamilton when, through legal counsel, Defendant conveyed to Dr. Hamilton restrictions the Defendant had imposed upon Mrs. Hamilton's ability to speak on matters of public concern with Defendant employees, despite her not being an employee of Defendant and when she had a pre-existing relationship with the Defendant employee in question.

91.    Dr. Hamilton engaged in speech under the First Amendment by speaking as a citizen on a matter of public concern when he spoke to media outlets about Defendant's discrimination and retaliation against Dr. Hamilton on the basis of sex and disability.

92.    Defendant retaliated against Dr. Hamilton when, because of Dr. Hamilton's speaking on a matter of public concern, it voted to empower the superintendent to terminate Dr. Hamilton and, ultimately, terminated Dr. Hamilton.

93. The Board, as the official policymaker for Defendant, voted to empower the Dr. Hamilton's termination.

94. Defendant retaliated against Dr. Hamilton when in its November 18, 2019 "Addendum to Notice of Mid-Year Termination of Term Contract" the Defendant threatened to disparage Dr. Hamilton in the media, when, in violation of Defendant Policy, Defendant did not provide Dr. Hamilton an opportunity to respond to the allegations made, participate in the investigation of the allegations, or first seek approval to proceed with the allegations to the TEA/Hearing Officer in violation of Defendant's policy and state law.

**COUNT 8: Violations of the Texas Open Meetings Act, Tex. Gov't Code §551, et. seq.**

95. Plaintiffs incorporate the preceding paragraphs as if fully restated herein.

96. On October 18, 2019, the Defendant violated the Texas Open Meetings Act when, contrary to the Defendant's custom and practice, the Agenda and corresponding "District Information Item" did not bear Dr. Hamilton's name but was intended to discuss a complaint against Dr. Hamilton in Executive Session at the Board of Trustees Meeting on Monday, October 21 at 5:00pm.

97. During the fall 2019 semester, the Defendant violated the Texas Open Meetings Act when the Defendant's Superintendent amended the notice of termination issued to Dr. Hamilton to add additional allegations, despite not previously receiving official permission from the School Board for the amendment, the Board not voting on the amendment in Open Session, and the amendment not being provided to Dr. Hamilton first, but rather being filed directly by the Defendant with the Texas Commissioner of Education and appointed Hearing Officer, in violation of state procedures for notice of termination.

## V.
## JURY REQUEST

Plaintiffs request a trial by jury.

## VI.
## PRAYER

Plaintiffs pray that the Court award:

- Actual and Compensatory Damages, including, but not limited to, back pay, front pay, and any other damages to which Plaintiffs may be lawfully entitled;

- Injunctive or Equitable Relief, including, but not limited to, reinstatement, an injunction prohibiting further violations of the ADA, the Rehabilitation Act, Title VII, Title IX, the U.S. Constitution, and the Open Meetings Act;

- Declaratory Relief;

- Attorney's fees; and

- Any an all other relief at law or in equity to which Plaintiffs may be entitled.

Respectfully submitted,

BY: *Seth Phillips*
Seth Phillips
Texas State Bar No. 24098259
The Phillips Firm, PLLC
PO Box 1131
Coppell TX 75019
(469) 730-4823 (Direct)
(469) 442-0118 (Fax)
sphillips@phillipsfirmpllc.com
ATTORNEY FOR PLAINTIFFS